Gregory LUNN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–87–126 CR.

Court of Appeals of Texas,
Beaumont.

June 29, 1988.

Freddie N. Jackson, William R. Hughes & Associates, P.C., Houston, for appellant.

Peter Speers, III, Dist. Atty. and Thomas D. Glenn, Asst. Dist. Atty., Conroe, for appellee.

OPINION

BURGESS, Justice.

A jury convicted appellant of sexual assault and assessed his punishment at fifteen years in the Texas Department of Corrections. He now urges six points of error.

Appellant argues under his first three points of error that certain portions of the state's jury argument during punishment phase was improper in that it contradicted the court's charge by urging the jury to apply the parole laws to this particular defendant.[1] The first point of error involves the following:

1. We note the appellant did not object to the use of the parole law instruction, nor does he urge

[PROSECUTOR]: ... I do want to talk to you about the second page of the charge where it starts talking about good time, the amount of good time a person can get in the penitentiary. I don't know if that's as plain to you as it is to say some of us that work all the time with it. Obviously, if we went up to the Texas Department of Corrections, and I stayed for a year, I would have a one-year of actual time. That's not good time. If I do what I'm supposed to do up there and if I try to rehabilitate myself and try to get back on the right footing and obey the rules and regulations of the Texas Department of Corrections, then I could or may—I can't tell you how much or what percentage or whether it's 3 for 1 or 5 for 1. I can't tell you that, but the prisoner may get good time credit.

[DEFENSE COUNSEL]: I object, Your Honor, to this argument. May we approach the bench? (The following occurred at the bench.) Your Honor, you instructed here that they are not to consider how the parole laws and good time would be applied to this particular defendant.

THE COURT: You're saying this defendant may get good time—

[PROSECUTOR]: I'm saying he may get good time. It says in this charge that they can consider it.

[DEFENSE COUNSEL]: The point is, Your Honor, the prosecution nor I can show the jury how good time is related or may be applied.

[PROSECUTOR]: I'm not trying to do that.

[DEFENSE COUNSEL]: He's implying it strongly.

THE COURT: I'm not going to grant your objection. But I'm going to issue a clarifying instruction.

Ladies and gentlemen, I'm not sustaining an objection in this area. However, bear in mind that you have been given instructions in the charge about the parole and good conduct time in general is applied to criminal cases. Bear in mind you are not to attempt to speculate as to this particular defendant, how it might be applied to him. Just be guided by my instructions in this charge as they come directly from the statute and the law in this case. You may proceed.

The second point challenges this portion:

[PROSECUTOR]: It says that the defendant would become eligible for parole when the actual time served plus any good conduct time earned equals one-third of the sentence. Let's say that you gave him the maximum sentence of 20 years. Say you gave him the maximum sentence and say he was completely incorrigible. He never tried to rehabilitate himself or anything else. He just completely gave all kinds of trouble, didn't obey any rules, and was incorrigible. He would still be eligible for parole in seven years, folks.

[DEFENSE COUNSEL]: Objection, Your Honor. I object to that argument. It contradicts the Court's charge, the law in the Court's charge.

THE COURT: I'm going to sustain the objection. I am not convinced that [the prosecutor] is attempting to argue improperly, but I must remind you again that you are not to speculate about how the parole and good conduct time would apply to this defendant because it would depend upon, for example, his conduct in prison as to how much good conduct time he might be awarded and you cannot predict that at this time. And also it would depend on decisions of the parole and other authorities. So, be guided by those instructions and please don't refer to how it might apply to this particular defendant.

[DEFENSE COUNSEL]: Judge, at this time you have told the jury to disregard what he said, have you not? I would ask the Court to instruct the jury to disregard what the defendant—what the prosecutor said and I would ask the jury be sequestered for a motion.

by point of error that its use amounted to "egregious harm" under *Rose v. State*, 752 S.W.2d 529

(Tex.Crim.App.1987) (plurality opinion).

THE COURT: I'm not going to interrupt argument for that purpose. If you have a motion, you will have to make it at this time.

[DEFENSE COUNSEL]: May we approach the bench? (The following occurs at the bench.) I think the jury has become so confused about what they should or shouldn't do that I want to move for a mistrial in this case.

THE COURT: I deny the motion.

[DEFENSE COUNSEL]: Was that put on the record?

THE COURT: Yes.

[DEFENSE COUNSEL]: The motion for mistrial was denied?

THE COURT: Motion for mistrial denied.

The third point alleges the following is error:

[PROSECUTOR]: So, any defendant under these same circumstances, if given the maximum of 20 years, any defendant, regardless of how incorrigible he was, he would still be eligible for parole after seven years. Actually after six and two-thirds years.

[DEFENSE COUNSEL]: Your Honor, I'm going to object. The Court states in the charge that you are not to consider the manner in which the parole law may be applied to this particular defendant. Counsel is arguing exactly that to this jury.

THE COURT: I heard him say "any defendant." Any person who would be subject. I overrule the objection.

■ Under point of error number one, nothing was preserved for review. While defense counsel interposed an objection, the court did not rule, but merely gave an instruction. It is necessary for the complaining party to obtain a ruling on the objection. *TEX.R.APP.P. 52(a)*. Failure to secure a ruling on the objection waived any alleged error. *Jackson v. State*, 536 S.W.2d 371, 372–73 (Tex.Crim.App.1976).

■ In point of error number two, counsel properly objected, the trial court gave an instruction and a motion was made for mistrial. The error here was properly preserved. We do not view the argument, however, to be the type that could not have been cured by the court's instruction. *See Logan v. State*, 698 S.W.2d 680, 683 (Tex. Crim.App.1985).

■ The argument complained of in point of error number three, under this charge, was not improper. It merely applied the court's charge to "any defendant." If it were improper, however, it was harmless. The court had previously admonished the jury not to apply the parole charge to this particular defendant. Furthermore, there was no additional argument by the state in this context. All three points of error are overruled.

■ Point of error number four complains that the following portion of the state's argument improperly interjected an extraneous burglary indictment:

[PROSECUTOR]: Some of you may be thinking of mercy. Where did this defendant show her any mercy? When he pushed inside and you saw that piece of paper in there probably about a burglarious entry. Yes, that is a burglary when he pushed inside her apartment, not wanted, not invited, but he's not going to be tried for that. That's just a burglarious entry. that's [sic] what that is and then what did he do? He grabbed her by the neck and then he winds up hitting her and she's crying and that sort of thing. Did he stop? Only one thing stopped him and you know what that was, that was a phone call. Then what did he do? Did he stop there? Did he turn around or do any kind of rehabilitation or anything like that? No. He started threatening her with even worse threats. Started working on her mind. "Look, your phone is tapped. Don't call the police. Don't go to work." That type of thing....

Appellant did not object to the argument complained of in point of error number four. Unless the argument complained of is so prejudicial that no instruction would cure the harm, failure to timely object waives any error. *Losada v. State*, 721 S.W.2d 305, 313 (Tex.Crim.App.1986). The argument even if improper, could have

been cured by instruction. This point of error is overruled.

Point of error number five states:

The trial court erred in refusing to allow effective cross-examination of State's witness, Pamela Davis, in order to establish her possible bias or motive against Appellant, denying his constitutional right to confrontation.

■ Appellant argues that the granting of a motion in limine in accordance with *TEX.R.CRIM.EVID. 412*, which governs the admissibility of evidence relating to a sexual assault victim's past sexual behavior, restricted his right of cross-examination. The denying or granting of a motion in limine, standing alone, cannot create reversible error. *Romo v. State*, 577 S.W.2d 251, 252 (Tex.Crim.App.1979). Furthermore, an offer must be made of the excluded evidence to preserve any error. *Basham v. State*, 608 S.W.2d 677, 679 (Tex. Crim.App.1980). Appellant refers to three specific instances which occurred during the examination of the victim. In the first instance, the state's objections were overruled when defense counsel asked the victim if she had any other boyfriends. Clearly this was no harm to appellant. In the second instance, appellant inquired into the reasons the victim's first husband was given custody of their child. When the witness stated she preferred not to answer the question, the trial court removed the jury and asked questions of the victim. Appellant did not attempt thereafter to have that testimony placed before the jury. The state subsequently placed that testimony before the jury, and appellant failed to object. This could not have been harm. The last specific instance complained about involves the state inquiring of the victim about sexual problems she was experiencing with her current husband. Appellant did object, and the objection was overruled. Appellant, however, has not shown this court any testimony he desired to have put before the jury which was refused. He has not, through a bill of exception, shown this court any questions he desired to propound to the victim, but was denied the right to do so. He has simply not shown nor pre-

served any error. This point of error is overruled.

■ The final point of error questions the sufficiency of the evidence. The victim testified that she had returned home from a date and a few minutes later heard a knock on the door. Thinking that it might be her date returning, she opened the door only to be confronted by an intruder in a ski mask. The intruder forced his way into the apartment, made various threats, and committed sexual assault by fondling her breasts and inserting a gloved finger into her vagina. Although appellant did not testify, his ex-wife testified that appellant was visiting his children at the time the assault occurred. The victim testified on direct examination:

Q. As far as being able to see his face, what part of his face could you see?

A. His eyes.

Q. Okay. Did he say anything?

A. Yes, when he came in the door, he grabbed me by the throat and started squeezing real hard, and he pinned me up against the wall and he asked me how come I wouldn't give him a chance at showing me what love was all about.

Q. When he asked you "why won't you give me a chance at showing what love is all about", at that time had you already been able to see his eyes?

A. Yes, sir.

Q. Had you recognized those eyes?

A. Yes, sir.

Q. All right. Did you recognize his voice?

A. Yes, sir, I did.

Q. Did you recognize the sayings that he was saying?

A. Yes, sir.

Q. Okay. Well, who did you recognize the voice and the eyes and the sayings to belong to?

A. Mr. Lunn.

. . . .

Q. I have to ask you a real stupid question, okay? But I have to ask it for my—from a legal standpoint. At the time that this happened on July 13th,

1986, were you the spouse of this defendant?

A. No, sir.

Q. Did you give him any type of consent to do this to you?

A. No, sir.

Q. And could you feel the gloved finger up inside your vagina?

A. Yes, sir.

Q. And did he use force and violence to perform this sexual assault on you?

A. Yes, he did.

Then on cross-examination:

Q. I see. Did you make a statement to Detective Brown concerning what you thought the person was who had attacked you?

A. Yes, sir.

Q. And was one of those statements made to Deputy Gosch that you felt like it was Gregory Lunn?

A. I may have. It's been a while.

Q. So, you don't remember?

A. I remember telling him that I thought it was Gregory Lunn. I don't remember my exact words.

Q. But you did say that you thought it was Gregory Lunn?

A. Yes, sir.

Q. And you were basing that on blue eyes and voice; is that correct?

A. And all the words that he said. It was all the same thing that I had always heard before.

. . . .

Q. As a matter of fact, ... you knew the person, didn't you, because the person was either Sam or one of your ex-husbands, wasn't it?

A. No, sir, it was Mr. Lunn.

Q. You never saw the person's face?

A. I saw his eyes. I had seen them many times before up close.

Last, on re-direct examination:

Q. Is there any doubt in your mind that it was anybody except this defendant who came into your apartment on July 13th, 1986, and sexually assaulted you?

A. No, sir.

The jury was asked to judge the credibility of the witnesses. It was free to accept or reject any or all of a witness' testimony. The jury obviously accepted the clear and positive testimony of the victim and rejected the alibi defense. In applying the standard of review, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, and in viewing the evidence in the light most favorable to the verdict, *Lincecum v. State*, 736 S.W.2d 673, 679 (Tex.Crim.App.1987), we overrule the point of error. The judgment is affirmed.

AFFIRMED.