Jeffery Edward TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–99–414–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Jan. 26, 2006.

Rehearing Overruled May 8, 2006.

Vivian King, Houston, for appellant.

Charles A. Rosenthal, Jr., Dist. Atty., Bridget Holloway, Asst. Dist. Atty., Houston, for appellee.

Before Justices YAÑEZ, RODRIGUEZ, and BAIRD.[1]

**OPINION ON REMAND**

Opinion by Justice BAIRD.

Appellant was charged by indictment with the offense of aggravated robbery. The indictment also alleged a prior felony conviction for the purpose of enhancing the range of punishment. The jury convicted appellant of the charged offense, appellant pleaded true to the enhancement allegation, and the jury assessed punishment at fifty years confinement in the Texas Department of Criminal Justice—Institutional Division and a fine of $10,000. On direct appeal, we addressed three of appellant's eleven issues and reversed the judgment of the trial court. *See Taylor v. State,* 74 S.W.3d 457, 464 (Tex.App.-Cor-

pus Christi 2002), *rev'd,* 109 S.W.3d 443 (Tex.Crim.App.2003). The court of criminal appeals granted the State's petition for discretionary review, reversed our decision, and remanded the case to this Court for consideration of appellant's remaining issues. *See Taylor v. State,* 109 S.W.3d 443, 455 (Tex.Crim.App.2003). We now address points of error four through eleven.

### I. Introduction of Witness's Prior Consistent Statement.

■ James Law testified as a witness in the State's case-in-chief. Law testified that he saw the alleged offense, drove the decedent's truck from the scene, and subsequently reported the crime to the homicide division of the Houston Police Department. During Law's testimony, the State established that Law made a prior *inconsistent* statement that he had *not* driven the decedent's truck. Following this testimony, the trial judge instructed the jury to consider the inconsistent statement "in judging the credibility of the witness, if it does assist you in judging the credibility of the witness, and is not to be considered by you as substantive evidence." Law then testified that he subsequently told a homicide detective that he (Law) had, in fact, driven the decedent's truck from the scene. The trial judge overruled appellant's objections to this prior *consistent* statement but gave the jury an instruction similar to the one discussed above.[2]

The fourth issue contends the trial judge erred by permitting Law to testify about the prior *consistent* statement. Appellant argues this testimony violated Texas Rule of Evidence 607, which provides that "[t]he

---

1. Former Texas Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon 2005).

2. All emphasis is supplied by the author unless otherwise indicated.

credibility of a witness may be attacked by any party, including the party calling the witness."[3] *See* Tex.R. Evid. 607. For the following reasons, we reject appellant's argument.

First, the testimony of Law's prior consistent statement was not offered for impeachment purposes. Rather the testimony was offered to show that Law initially lied out of fear but later "came clean" and ultimately told the truth. Because the prior *consistent* statement was not offered to impeach Law's testimony, Rule 607 is not applicable.

■ Second, a proper objection to Law's prior *consistent* statement could have been lodged under Texas Rule of Evidence 801(e)(1)(B), which prohibits prior consistent statements unless offered to rebut an express or implied charge of recent fabrication or improper influence. Tex.R. Evid. 801(e)(1)(B). The rule was applicable in the instant case because Law's testimony regarding his prior *consistent* statement was offered in the State's case-in-chief. At that point, there had been no charge of fabrication or improper influence. However, an objection under Rule 801(e)(1)(B) was not lodged in the trial court; rather, the rule is cited only in a footnote in appellant's brief. Accordingly, this argument was not preserved for appellate review. *Trevino v. State*, 991 S.W.2d 849, 854 (Tex.Crim.App.1999) (to preserve claim for appellate review, objection at trial must comport with the argument advanced on appeal).

For these reasons, the fourth point of error is overruled.

## II. Appellant's Custodial Statement.

The fifth issue contends the trial court erred in admitting appellant's custodial statement. Appellant advances two arguments in support of this point. Initially, he argues the statement was inadmissible under the doctrine of collateral estoppel which "prevents the relitigation of facts once they have been found in an action between the same parties." *State v. Patrick*, 990 S.W.2d 450, 451 (Tex.App.-Corpus Christi 1999, no pet.). To invoke this doctrine, appellant relies upon language in the opinion reversing his first conviction. *Taylor v. State*, 945 S.W.2d 295, 299 (Tex. App.-Houston [1st Dist.] 1997, pet. ref'd). In the first trial, the State offered into evidence the gun allegedly wielded by appellant while his accomplice, Mickey Webb, stabbed the decedent. The First Court of Appeals held the arrest which led to the discovery of the firearm was illegal. *Id.* Based upon this holding, the court stated "the trial court erred in not suppressing *any* evidence obtained as a result of the invalid arrest." *Id.* The admissibility of the custodial statement was not specifically addressed by the court of appeals because the State did not seek to introduce it.

■ The "law of the case" doctrine provides "that an appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal." *Ware v. State*, 736 S.W.2d 700, 701 (Tex.Crim.App.1987). "The doctrine assures trial courts that they can rely on the appellate court's disposition of an issue in presiding over the case and provides an incentive for trial courts to follow these decisions closely." *Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim.App.1999); *Lee v. State*, 67 Tex. Crim. 137, 148 S.W. 706, 713 (1912) (op. on reh'g) (without "law of the case" doctrine,

---

3. Rule 607 abandoned the "voucher rule" and permits either party to impeach its own witness. Therefore, the State was not prohibited from offering Law's prior *inconsistent* statement to impeach his testimony.

"trial courts would in a great measure be at sea, and would feel inclined and be authorized to give but little weight to the decisions of the [appellate] court"). Most recently, in *Carroll v. State*, the court of criminal appeals recognized that the law of the case doctrine:

> provides assurance to the trial court that it need not reconsider a specific legal issue in a particular case which a higher court has already decided; the trial judge is entitled to follow and rely upon the reviewing court's reasoning and result on that specific issue. The doctrine thus promotes consistency and efficiency. *See generally* 5 AM.JUR.2D § 6 05 (noting that "the various rules which make up the law of the case doctrine serve not only to promote the goal of judicial economy but also operate (1) to protect the settled expectations of the parties, (2) to insure uniformity of decisions, (3) to maintain consistency during the course of a single case, (4) to effectuate the proper and streamlined administration of justice, and (5) to bring litigation to an end").

*Carroll v. State*, 101 S.W.3d 454, 461 (Tex. Crim.App.2003). In the instant case, therefore, the previous decision of the First Court of Appeals that the arrest was illegal was binding on the trial judge, and we consider it binding on this Court as well. To that extent, we accept the premise of appellant's argument.

■ The question is how expansive a reading we give the language used by the First Court of Appeals. Appellant asks us to take the language literally; the court called for the suppression of "any evidence," and that phrase necessarily includes appellant's custodial statement. We reject this argument for two reasons. First, as noted above, the statement was not admitted by the State in the first trial.[4]

Therefore, the only "fruit" from the illegal arrest was the physical evidence. Consequently, we believe the phrase "any evidence" was necessarily limited to physical evidence.

■ Second, to construe the court of appeal's use of the phrase "any evidence" to include appellant's statement would be contrary to the law existing from the time of appellant's arrest until today. Our law provides that if a court determines an arrest is illegal and the defendant subsequently confesses, the court must conduct an analysis to determine if the taint from the illegal arrest is sufficiently attenuated so the defendant's decision to give the statement was an act of free will. *Bell v. State*, 724 S.W.2d 780, 788 (Tex.Crim.App. 1986). The First Court of Appeals was certainly aware of *Bell* and had conducted the attenuation analysis dictated by *Bell* as early as 1988 in *Cruz v. State*, 764 S.W.2d 302, 305 (Tex.App.-Houston [1st Dist.] 1988, no pet.). We conclude the First Court of Appeals did not conduct an attenuation analysis because the question of whether appellant's statement was free from the taint of his illegal arrest was simply not an issue in that appeal.

For these reasons, we reject appellant's argument that his statement was part and parcel of the "any evidence" phraseology employed by the First Court of Appeals.

■ We now turn to appellant's second argument under this point of error. Prior to the admission of appellant's statement in the instant trial, a hearing was held outside the presence of the jury. At that hearing, everyone worked from the premise that appellant's arrest was illegal. The trial judge then conducted the attenuation analysis discussed above and concluded the statement was admissible. Appellant con-

---

**4.** In fact, the statement was introduced by appellant as a part of his case-in-chief.

cedes the trial judge employed the correct factors in conducting the attenuation analysis.[5]  Appellant simply disagrees with the trial judge's conclusion that the statement was an act of free will attenuated from the taint of the illegal arrest.

The trial judge's decision to admit or exclude evidence is viewed under an abuse of discretion standard.  *Sells v. State*, 121 S.W.3d 748, 766 (Tex.Crim.App.2003).  An abuse of discretion occurs when the decision lies outside the zone of reasonable disagreement.  *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex.Crim.App.1990) (op. on reh'g).  If the trial judge's ruling was within the zone of reasonable disagreement, the appellate court will not intercede.  *Id.*  Recently we stated that "abuse of discretion does not imply intentional wrong or bad faith, or misconduct, but means only an erroneous conclusion."  *Page v. State*, 170 S.W.3d 829, 835 n. 4 (Tex.App.-Corpus Christi 2005, no pet.).  In the instant case, the trial court analyzed each of the *Bell* factors after hearing the testimony related to appellant's illegal arrest.  We have reviewed that analysis.  While we may disagree with the weight given to the particular factors and may have come to a different conclusion, we cannot say the trial judge's attenuation analysis lies outside the zone of reasonable disagreement.  Consequently, the fifth issue is overruled.

### III.  Closing Argument—Guilt Phase.

■  The sixth issue contends the trial court erred in permitting the prosecutor to make an improper request for the jury to speculate about matters not in evidence.  We have carefully reviewed the complained of argument and hold that it was made in response to the argument advanced by defense counsel.  Our law is clear that one of the appropriate purposes of closing argument is to answer the argument of opposing counsel.  *Cantu v. State*, 939 S.W.2d 627, 633 (Tex.Crim.App.1997); *Hernandez v. State*, 819 S.W.2d 806, 820 (Tex.Crim.App.1991).  Accordingly, we overrule the sixth issue.

### IV.  Multifarious Points of Error.

The seventh issue combines several separate complaints related to the guilt phase of the trial into a single issue and contends that their cumulative effect requires reversal.  The eleventh issue combines the complaints raised in the seventh issue with several complaints related to the punishment phase of the trial and contends their cumulative effect requires reversal.

■  A multifarious point is one that embraces more than one specific ground.  *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.-Houston [14th Dist.] 2000, pet. ref'd).  Multifarious points present nothing for appellate review.  *Cuevas v. State*, 742 S.W.2d 331, 336 n. 4 (Tex.Crim.App.1987).  We hold the seventh and eleventh issues are multifarious.  Accordingly, they are overruled.

### V.  Admission of Pen Packet.

The ninth issue contends the trial court erred in admitting appellant's "pen packet."  Appellant argues that his plea of true

---

**5.**  *Bell* adopted the four-prong analysis of *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), which prescribes consideration of the following factors in an attenuation analysis:

  1)  the giving of *Miranda* warnings;
  2)  the temporal proximity of the arrest and the confession;

  3)  the presence of intervening circumstances; and
  4)  the purpose and flagrancy of the official misconduct.
*Id.* at 604–05, 95 S.Ct. 2254.

to the enhancement allegation rendered the "pen packet" irrelevant and prejudicial. The trial judge overruled those objections, finding the evidence was both relevant and more probative than prejudicial. This Court has previously decided this issue contrary to appellant. *Charleston v. State,* 834 S.W.2d 517, 518–19 (Tex.App.-Corpus Christi 1992, no pet.). Appellant advances no reason to revisit our precedent. Consequently, we overrule the ninth issue.

### VI. Parole Instruction

The eighth issue contends the trial judge erred by instructing the jury on the issue of parole as required by article 37.07, section 4(a), of the code of criminal procedure. *See* Tex.Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.2005). Appellant argues the instruction misstated the law and was misleading. Following the filing of the briefs in this case, the court of criminal appeals considered and rejected these arguments in *Luquis v. State,* 72 S.W.3d 355, 368 (Tex.Crim.App.2002). We, of course, are bound by the holdings of *Luquis.* Because the instant case is indistinguishable from *Luquis,* the eighth issue is overruled.

### VII. Closing Argument—Punishment Phase.

■ In the tenth issue, appellant contends the trial court erred by permitting the prosecutor to argue how the law of parole would be applied to appellant. The State made the following argument at the punishment phase:

Now, let me stop and talk to you about the charge for just a moment so that you can—you probably do understand already, but the Judge mentioned to you that as far as parole eligibility that *the defendant* becomes eligible for parole after *he* serves one-half of the sentence imposed or 30 years. Let me explain

that to you for just a moment. Let's say a sentence of 40 years—

Appellant objected to this line of argument because it applied the law of parole to appellant. The trial court overruled the objection.

The prosecutor continued: "A 40–year sentence means *the defendant* becomes eligible for parole after serving 20 years." Again appellant's objection was overruled. The prosecutor then stated: "A 60–year sentence means *he* becomes eligible after serving 30 years. A sentence of life or 75 years means *he* becomes eligible after 30 years. So, why would I ask you for a life sentence and a $10,000 fine if *he* becomes eligible at the same point—." This argument was interrupted by appellant's objection, which was also overruled.

■ Appellant contends the State's argument violated code of criminal procedure article 37.07, section 4(a), which mandates the instruction complained of in part VI, *supra.* That instruction provides, *inter alia:* "It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole." The instruction further provides that a defendant does not become parole eligible "until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less." The instruction concludes:

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. *You are not to consider*

*the manner in which the parole law may be applied to this particular defendant.*

As we have stated, "our law could not be more clear that a prosecutor must avoid applying the parole law specifically to the defendant on trial." *Hawkins v. State*, 99 S.W.3d 890, 900–01 (Tex.App.-Corpus Christi 2003), *rev'd on other grounds*, 135 S.W.3d 72 (Tex.Crim.App.2004). As seen by the italicized portions of the State's argument, the prosecutor's remarks were directed to "the defendant" and when "he" would become eligible for parole. Such personalized references are improper. *Facundo v. State*, 971 S.W.2d 133, 135–36 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd) (holding arguments such as: "For example, if you assess ten years in prison, what it says here, *he's* got to serve five years flat," and "What the law says here, if *the defendant* is sentenced to a term of imprisonment, *he* will not become eligible for parole until the actual time served equals one-half of the sentence imposed" to be improper comments on how the parole law affected the defendant on trial); *Taylor v. State*, 911 S.W.2d 906, 914 (Tex. App.-Fort Worth 1995, pet. ref'd) (Dauphinot, J. concurring) ("Why is it important for the jury to understand there is no practical difference in a sixty-year sentence and a ninety-nine-year sentence unless they are being asked to apply the parole law to the case before them?"). *Compare Lunn v. State*, 753 S.W.2d 492, 494 (Tex.App.-Beaumont 1988, no pet.) (using the phrase "any defendant" to make generic argument related to parole was proper).

■ Relying on *Whiting v. State*, 797 S.W.2d 45, 48 (Tex.Crim.App.1990), the State argues there is no error in quoting or paraphrasing the jury charge. With this general rule we do not disagree, and we further agree this rule extends to the parole instruction. *See Perez v. State*, 994 S.W.2d 233, 237 (Tex.App.-Waco 1999, no pet.); *Taylor*, 911 S.W.2d at 911. However, this general rule does not authorize prosecutors to apply the parole laws to the defendant on trial. *Perez*, 994 S.W.2d at 237; *Taylor*, 911 S.W.2d at 911.

We hold the complained of argument was improper. Accordingly, the trial court erred in overruling appellant's objection to that argument.

■ We now turn to the issue of harm. Generally, error resulting from improper jury argument is non-constitutional in nature. *Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000). Therefore, we must conduct the harm analysis prescribed by Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* Tex.R.App. P. 44.2(b). Under this rule, an error "that does not affect substantial rights must be disregarded." *See id.* Substantial rights are affected when the error had a substantial and injurious influence on the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001). An error that has no influence, or only a slight influence, on the verdict should be deemed harmless. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998). However, if the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful. *Webb v. State*, 36 S.W.3d 164, 182 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Neither party has the burden of proof under Rule 44.2(b). *Id.* Rather, the appellate court will examine the record for purposes of determining harm. *Id.*

■ To determine the issue of harm in the context of non-constitutional jury argument error, we apply the three factors recognized in *Mosley v. State*, 983 S.W.2d 249, 259 (Tex.Crim.App.1998):(1) severity of the misconduct; (2) measures adopted

to cure the misconduct; and (3) certainty of conviction absent the misconduct. *Id.*

Under the first prong, the severity of the misconduct is identified with the magnitude of the prejudicial effect of the prosecutor's remarks. *Hawkins v. State,* 135 S.W.3d 72, 77 (Tex.Crim.App. 2004). The complained of argument informed the jury that irrespective of the sentence imposed, appellant may well serve far less time in prison. A similar argument was made in *Chester v. State,* 167 S.W.3d 935 (Tex.App.-Amarillo 2005, pet. ref'd). That court determined the argument "could easily be interpreted as an inducement to assess a longer term of imprisonment based on factors other than those permitted by the legislature; indeed the latter expressly prohibited the consideration of parole in setting punishment." *Id.* at 937. The same is true of the argument in the instant case. We find the jury was more likely to assess a harsher sentence following the argument than if the argument had not been made. Therefore, the argument was very prejudicial. And, that prejudice was magnified by the State's continued arguments applying the law of parole specifically to appellant. Consequently, we hold the improper argument constituted severe misconduct. *See id.*

The second factor considers the measures adopted to cure the misconduct. In the instant case, the trial court overruled appellant's objections to the improper argument. The trial court took no curative measures. In this setting, the trial court's error in permitting the improper argument actually compounds the harm because, by overruling the objections, the trial court effectively placed its stamp of approval on the argument. *Good v. State,* 723 S.W.2d 734, 738 (Tex.Crim.App.1986).

Additionally, we do not believe the language in the jury instruction that the jurors were "not to consider the manner in which the parole law may be applied to this particular defendant" can be considered a curative measure. By definition, a curative measure only occurs *after* the error; there is simply nothing to "cure" until the improper conduct is committed. The instruction to not consider the application of the law of parole is read to the jury *before* the improper argument is made. Therefore, the instruction is not a measure adopted by the trial court to cure the misconduct. Rather, it is a measure mandated by the legislature to prevent misconduct. It would be a sad irony indeed if the State could, on one hand, violate the statute thus creating the circumstances which give rise to the error and, on the other hand, rely on the language within that statute to cure its misconduct. Because the trial court took no corrective measures to cure the misconduct, we hold this factor militates toward a finding of harm.

Finally, we consider the third *Mosley* factor which must be tailored to the punishment phase of a non-capital trial; in this context, the final factor is the certainty of the punishment assessed absent the misconduct, that is, the likelihood of the same punishment being assessed. *Hawkins,* 135 S.W.3d at 77. Appellant was convicted of a first-degree felony offense. The punishment range, enhanced by a prior felony conviction, was imprisonment for life, or for any term of not more than 99 years or less than 15 years, and a fine up to $10,000. Tex. Pen.Code Ann. § 12.42(c)(1) (Vernon Supp.2004–05). The prior conviction was also for a first degree felony, namely aggravated robbery. The instant offense was a brutal crime. However, the fatal injuries were not inflicted by appellant, but rather by his accomplice, Mickey Webb.

At his first trial, the jury assessed punishment at life. In the instant case, the prosecutor asked for a like sentence and a $10,000 fine. However, the jury did not believe appellant's participation in the offense warranted that sentence. The prosecutor's recommendation was rejected and punishment was set at confinement for fifty years and a $10,000 fine. The jurors took their oaths seriously, deliberating approximately eight hours before arriving at the punishment verdict.[6] The lengthy deliberations indicate the jurors were uncertain as to what the ultimate punishment would be. Therefore, we are unable to say with any degree of certainty that the jury would have assessed the same sentence absent the misconduct.[7] Accordingly, we hold this factor militates toward a finding of harm.

In light of the foregoing analysis of the three *Mosley* factors, we hold the error had a substantial and injurious influence on the jury's verdict. *Johnson,* 967 S.W.2d at 417. Accordingly, the error cannot be disregarded. *See* TEX.R.APP. P 44.2(b). We sustain the tenth issue.

The trial court's judgment of conviction is affirmed. However, because we sustain the tenth issue, the judgment of the trial court is reversed as it relates to the sentence. This case is remanded to the trial court for a new trial on the issue of punishment. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2005).

---

6. The docket sheet reflects the jury began deliberating at 11:48 a.m. and deliberated continuously, except for lunch, until 7:02 p.m. at which time the jurors were sequestered. Deliberations resumed the following day at 9:15 a.m. and concluded with the verdict at 11:30 a.m.

7. The requirement of "certainty" within this factor prevents appellate judges from sitting as the thirteenth juror attempting to objectively review what jurors have subjectively decided.