

NUMBER 13-08-00132-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

AURELIO GOMEZ,                                                          Appellant,

**v.**

THE STATE OF TEXAS,                                                    Appellee.

On appeal from the 94th District Court of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Justice Garza**

A Nueces County jury convicted appellant, Aurelio Gomez, of evading arrest or detention using a vehicle, a state jail felony.  *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1) (Vernon 2003).  The trial court sentenced Gomez to two years' detention in a state jail facility, with the sentence probated for a period of two years, and a $500 fine.  Gomez appeals, contending that:  (1) the evidence was legally and factually insufficient to support his conviction; and (2) the trial court erred by excluding the testimony of two defense witnesses.  We affirm.

## I. BACKGROUND

### A.    State's Evidence

Corpus Christi Police Department officer Kurt Russell testified that on the evening

of June 12, 2005, he was patrolling in a marked police vehicle on Westgate Road in Corpus Christi, Texas. At approximately midnight, he observed Gomez drive his truck past him on the wrong side of the road, nearly striking his vehicle. Officer Russell performed a U-turn and attempted to catch up with Gomez's truck, turning left onto Up River Road and then right onto Nueces Bay Boulevard. Officer Russell caught up to within five to six car lengths of Gomez's truck after he turned right onto Nueces Bay Boulevard; his unit's emergency lights and siren were then activated. There was no other traffic in between the two vehicles. Officer Russell estimated that Gomez was proceeding at fifty to sixty miles per hour down Nueces Bay Boulevard, where the speed limit is 35 miles per hour. According to Officer Russell, Gomez then ran a red light and turned left onto Buddy Lawrence Drive, when his truck then crashed into a parked vehicle. Gomez was arrested at the scene and taken to the hospital.

Officer Pedro Trujillo of the Corpus Christi Police Department accompanied Officer Russell on patrol that night. Officer Trujillo testified that he observed Gomez's vehicle cross over into their lane on Westgate Road, after which Officer Russell turned the police vehicle around to pursue Gomez. Officer Trujillo estimated Gomez's speed at between forty or fifty miles per hour by the time Gomez had turned onto Up River Road, and that he "began to speed" only "after we had to veer off to the right and U-turn." According to Officer Trujillo, the officers caught up with Gomez near the intersection of Nueces Bay Boulevard and Up River Road, at which point Officer Russell activated the emergency lights and siren. Officer Trujillo stated that Gomez then ran a red light and turned left onto Buddy Lawrence Drive, where he crashed into a parked vehicle. Officer Trujillo stated that Gomez was able to communicate clearly with him after the crash, and that Gomez did not appear to be disoriented or confused.

When Gomez's counsel asked Officer Trujillo "[w]hy wouldn't the [emergency] lights have been initiated when you made the U-turn," he responded: "Because we're trying to catch up to him. I don't think he would have seen us. We're trying to get close enough to

2

activate the lights so he could pull over and know we were behind him."

**B.    Gomez's Evidence**

Pablo Benavides, who was riding as a passenger in Gomez's truck, testified that he did not hear or observe any police car behind Gomez's truck until after the crash. When defense counsel asked if Gomez appeared to be suffering from "some kind of medical problem" when he was driving down Nueces Bay Boulevard, Benavides responded:

> Yes, sir. . . . I observed him [Gomez] grabbing his chest. He was like panting, breathing hard, and—and I—that's when I—I didn't want to panic but in a way I did panic. I was just trying to observe him and said, "Hey, let's pull over, let's take care of you, let's see what's going on. Let me drive you to the hospital," or, you know, and he—he wasn't—he wasn't really paying attention to me that much because he was just—he wasn't observant. . . . [H]e was like in some sort of shock. He wasn't—he was delirious. That's another word for it.

Gomez also testified that he was not aware of the police unit behind his vehicle until after he crashed into the parked vehicle. According to Gomez, at the time in question, his truck's tinted windows were rolled up and the radio and air conditioning were turned on. Gomez testified that he did not hear any sirens or observe any police lights as he drove down Nueces Bay Boulevard. Gomez then stated:

> [O]nce we were out of the red light [at the intersection of Nueces Bay Boulevard and Buddy Lawrence Drive] I wasn't feeling well. I was hyperventilating, I was grabbing my chest and Mr. Benavides kept on asking me . . . if I was doing okay, I was doing okay, and he said "Pull over and I'll take over, I'll take you," you know, "I'll take you, you're not feeling well," and I told him that the light was red. And as soon as—as I was looking down he—he was looking up, he told me "The light is green, go ahead and go." As soon as I turned to the left on Buddy Lawrence, I tried to pull over and—and instead of hitting the brake I hit the accelerator.

Gomez further explained to the jury:

> I have a condition of the heart that if I continue with the anxiety or stress I will start breathing, hyperventilating. Pain—pain starts going into my heart, blood—the blood that flows into my heart starts slowing down. My temperature starts racing.
>
> At that time, I—I start breathing, trying to catch my breath, my eyes become dizzyness [sic]. I start getting headaches and I start to lose consciousness.

Gomez testified that he has been treated on several occasions for this condition and that

3

he has a clinically diagnosed heart problem, but that he did not know the name of the medical condition.

Defense counsel then called Rowland Andrade[1] as a witness. Outside the presence of the jury, Andrade testified that Gomez performed yard work for Andrade in February 2007 and that Gomez "passed out" while doing that work, compelling Andrade to perform CPR on Gomez. Andrade stated that he did not know what caused Gomez to pass out that day, nor did he know if Gomez suffered from any medical condition. The State's attorney, noting that the rule on exclusion of witnesses had been invoked, objected to Andrade testifying before the jury because Andrade had previously been present in the courtroom during Gomez's testimony. *See* TEX. R. EVID. 614. The trial court sustained the State's objection.

Subsequently, defense counsel called to the witness stand Alberto Benitez, a former United States Border Patrol agent and former "police systems and practices" instructor at Del Mar College. Benitez testified outside the presence of the jury that it is "standard operating procedure" for police officers to keep audio recordings for chases or pursuits and that the lack of such evidence in this case "lends itself to not allowing integrity to the case" and "would create serious doubt." The State's attorney objected to the testimony. The trial court sustained the objection, noting that defense counsel did not ask Officers Russell or Trujillo about whether there were any audio or video recordings available of the events in question and that Benitez is "not an expert on what the policy is with the Corpus Christi Police Department."[2] The trial court offered defense counsel the opportunity to recall one or both of the officers to testify as to the particular procedures employed by the Corpus Christi Police Department; specifically, whether audio or video recordings were made of

---

[1] Gomez's brief refers to this individual as "Andrade Rowland," whereas the state's brief, and the trial court record, refers to him as "Rowland Andrade." For ease of reference, we will refer to him simply as "Andrade."

[2] Benitez was permitted to testify before the jury as to Gomez's character. Specifically, Benitez testified that Gomez was a student of his at Del Mar College and that Gomez "has a reputation for being a law-abiding . . . citizen" and "has the utmost respect for law enforcement."

4

the incident. After consulting with Gomez, defense counsel informed the trial court that he did not intend to recall the officers.

## II. DISCUSSION

### A. Sufficiency of the Evidence

By his first issue, Gomez contends that the evidence adduced at trial was legally and factually insufficient to support his conviction.

#### 1. Standard of Review and Applicable Law

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003). "This standard is meant to give 'full play to the [jury's] responsibility fairly' to 'draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). We are not required to determine whether we believe that the evidence at trial established guilt beyond a reasonable doubt; rather, when faced with conflicting evidence, we must presume that the trier of fact resolved any such conflict in favor of the prosecution, and we must defer to that resolution. *State v. Turro*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993).

In conducting a factual sufficiency review, we consider the evidence in a neutral light. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). The verdict is to be set aside only if: (1) it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust; or (2) it is against the great weight and preponderance of the evidence. *Id.* at 415 (citing *Johnson v. State*, 23 S.W.3d 1, 10 (Tex. Crim. App. 2000)). To reverse a verdict for factually insufficient evidence, we must "explain in exactly what way the State's evidence, while legally sufficient, is nevertheless too weak to withstand scrutiny, or in exactly what way we perceive the conflicting evidence greatly to preponderate against conviction." *Id.* at 414.

Both legal and factual sufficiency are measured by the elements of the offense as

5

defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge, Gomez committed the charged offense if he (1) intentionally fled from a person he knew was a peace officer attempting lawfully to arrest or detain him, and (2) used a vehicle while he was in flight. *See* TEX. PENAL CODE ANN. § 38.04(a), (b)(1). A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a) (Vernon 2003).

### 2. Analysis

Gomez argues specifically that there was insufficient evidence adduced for the jury to have concluded that he knew a police officer was lawfully attempting to detain him. *See id.* § 38.04(a). We disagree.

Officers Russell and Trujillo testified that they observed Gomez driving on the wrong side of the road, causing the officers to perform an evasive maneuver in order to avoid a collision. Both officers testified that, as they were in pursuit with their siren and emergency lights activated, Gomez was driving at a high rate of speed and eventually ran a red light at Buddy Lawrence Drive and crashed into a parked vehicle. Officer Trujillo testified that Gomez only started speeding "after we had to veer off to the right and U-turn." From this testimony, the jury could have made a reasonable inference that Gomez knew that the officers were lawfully attempting to detain him. *See Mayfield v. State*, 219 S.W.3d 538, 540-41 (Tex. App.–Texarkana 2007, no pet.) (finding legally sufficient evidence to support conviction where officer was in a marked squad car with emergency lights flashing and siren sounding, and appellant did not stop for an extended period of time); *Rogers v. State*, 832 S.W.2d 442, 444 (Tex. App.–Austin 1992, no pet.) (finding legally sufficient evidence despite no direct evidence showing that appellant had knowledge that police officer was attempting to detain him); *see also Saenz v. State*, 976 S.W.2d 314, 322 (Tex. App.–Corpus Christi 1998, no pet.) ("Jurors are expected to draw upon their own

6

experiences and common knowledge and apply them to the facts at hand."). Gomez testified that he was not aware of the police pursuit until after he crashed his truck; however, we must defer to the jury's resolution of this apparent conflict in the evidence. *See Turro*, 867 S.W.2d at 47.

We conclude, viewing the evidence in the light most favorable to the verdict, that a rational jury could have found beyond a reasonable doubt the essential elements of the evading arrest or detention using a vehicle. *See Sanders*, 119 S.W.3d at 820. Accordingly, the evidence was legally sufficient to support Gomez's conviction. Moreover, viewing the evidence in a neutral light, we conclude that the jury's verdict is not clearly wrong, manifestly unjust, or against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414-15. Accordingly, the evidence was factually sufficient to support Gomez's conviction. His first issue is overruled.

## B.    Excluded Testimony

By his second issue, Gomez contends that the trial court erred in sustaining the State's objections to the testimony of two defense witnesses, Andrade and Benitez. We disagree.[3]

### 1.    Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard, and we will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). The trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *McCarty*, 257 S.W.3d at 239;

---

[3] On appeal, the State argues that Gomez's second issue is "mutifarious in that i[t] raises wholly separate complaints concerning the exclusion of different testimony from two witnesses based on completely different reasons." While a multifarious point presents nothing for review, *see Taylor v. State*, 190 S.W.3d 758, 764 (Tex. App.–Corpus Christi 2006), *rev'd on other grounds*, 233 S.W.3d 356 (Tex. Crim. App. 2007), we may elect to consider such issues if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made. *Stults v. State*, 23 S.W.3d 198, 205 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd). Because the alleged errors to which Gomez objects are clear, we elect to address his second issue.

*Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992)

### 2.    Andrade

Texas Rule of Evidence 614 provides generally that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." TEX. R. EVID. 614. "The Rule," as it is known, is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony. *Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003); *Webb v. State*, 766 S.W.2d 236, 239 (Tex. Crim. App. 1989). Although there are exceptions to the Rule,[4] Gomez does not contend that any of them apply to Andrade.

> When a witness violates the Rule and his testimony is excluded, we must ask:
>
> (1) . . . were there particular circumstances, other than the mere fact of the violation, which would tend to show the defendant or his counsel consented, procured or otherwise had knowledge of the witness's presence in the courtroom, together with knowledge of the content of that witness's testimony; and (2) if no particular circumstances existed to justify disqualification, was the excluded testimony crucial to the defense.

*Routier*, 112 S.W.3d at 590 (citing *Webb*, 766 S.W.2d at 245). For a defendant to prevail, he must satisfy both prongs and show that the evidence "was 'extraordinary' in the sense that it was crucial to his defense." *Webb*, 766 S.W.2d at 245.

Without considering the first prong of this test, we note that Gomez has not satisfied the second prong, and therefore, his challenge fails. Andrade's proffered testimony was

---

[4] The Rule does not apply to:

(1) a party who is a natural person or in civil cases the spouse of such natural person;

(2) an officer or employee of a party in a civil case or a defendant in a criminal case that is not a natural person designated as its representative by its attorney;

(3) a person whose presence is shown by a party to be essential to the presentation of the party's cause; or

(4) the victim in a criminal case, unless the victim is to testify and the court determines that the victim's testimony would be materially affected if the victim hears other testimony at the trial.

TEX. R. EVID. 614.

8

that Gomez had passed out for an unknown reason while performing yard work over 18 months after the alleged offense occurred. Gomez contends that this testimony would have bolstered his claim that he suffered from a debilitating attack at the time of the alleged offense which prevented him from being aware that he was being pursued by police. However, defense counsel stated to the trial court that Andrade's "testimony is . . . of minor nature." We conclude that, even if Andrade's testimony was relevant to an issue before the jury, it was not "extraordinary" so as to be "crucial to [Gomez's] defense." *See id.* Accordingly, the trial court did not abuse its discretion by sustaining the State's objection to Andrade testifying before the jury. *See McCarty*, 257 S.W.3d at 239.

### 3. Benitez

The State argues that Gomez failed to preserve any error the trial court may have committed by sustaining the State's objection to Benitez's testimony, noting that defense counsel declined an opportunity to recall Officers Russell and Trujillo to testify as to whether audio or video recordings were made of the incident in question. *See* TEX. R. APP. P. 33.1. However, even if defense counsel had accepted the trial court's invitation to recall the officers, there is no indication that the trial court would have then permitted Benitez to give his proferred testimony regarding the "standard operating procedure" of law enforcement with regard to recordings made during police pursuits. We find, therefore, that Gomez has preserved this issue for appeal.

Nevertheless, the issue is meritless because Benitez's proferred testimony was irrelevant. Evidence is relevant only if it has a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Evidence which is not relevant is inadmissible. TEX. R. EVID. 402. Benitez did not have personal knowledge as to the standard procedures of the Corpus Christi Police Department regarding recordings of police pursuits. *See* TEX. R. EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal

9

knowledge of the matter.").

Evidence that Officers Russell and Trujillo deviated from standard procedure in making their pursuit—or evidence that audio or video recordings were made but not provided to defense counsel—might arguably have been relevant to the credibility of the officers' testimony. However, Benitez's proferred testimony that it is "standard operating procedure" for law enforcement agencies in general to routinely make video and audio recordings of police pursuits is not germane. This testimony may be relevant to the question of whether the equipment and procedures of the Corpus Christi Police Department need to be reviewed, but it does not tend to make the existence of any fact of consequence in this case more or less probable. *See* TEX. R. EVID. 401. Accordingly, we conclude that the trial court did not abuse its discretion in sustaining the State's objection to Benitez's testimony. *See McCarty*, 257 S.W.3d at 239. Gomez's second issue is overruled.

## III. CONCLUSION

Having overruled Gomez's two issues, we affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).
Memorandum Opinion delivered and
filed this the 5th day of March, 2009.