NUMBER 13-09-00585-CR

                   

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI – EDINBURG

                                                                                                                             

 

RICARDO GARZA LOPEZ,                                                                   Appellant,

 

v.

 

THE STATE OF TEXAS,                                                               
Appellee.

                                                                                                                             

 

On appeal from the 430th District Court

of Hidalgo County, Texas.

                                                                                                                             

 

MEMORANDUM OPINION

 

Before Chief Justice
Valdez and Justices Rodriguez and Benavides

Memorandum Opinion by
Chief Justice Valdez

 

            A jury found appellant, Ricardo Garza Lopez,
guilty of capital murder, and because the State did not seek the death penalty,
the trial court assessed punishment at life imprisonment in the Institutional
Division of the Texas Department of Criminal Justice.  See Tex. Penal Code Ann. §§ 12.31(a)(2),
19.03(a)(2) (Vernon Supp. 2010).  By eight issues, Lopez contends that:  (1)
the evidence is legally and factually insufficient to support his capital
murder conviction; (2) the “trial court committed reversible error by
instructing the jury abstractly on the law of parties respecting [Texas Penal
Code section] 7.02(b), but not meaningfully including that abstract theory of
criminal responsibility in the subsequent application paragraph”; (3) the
“trial court committed reversible error by including an unsubstantiated and
prejudicial comment on the weight of the evidence in [the] application
paragraph [of the jury charge] by simply denominating, or characterizing, two
unnamed persons as conspirators”; (4) the trial court erred by including four
lesser-included offenses in the jury charge; (5) the trial court abused its
discretion in allowing hearsay testimony from several investigators; (6) “the
trial court abused its discretion in
allowing . . . [Investigator Max] Cantu to testify about an
ultimate issue of fact for the jury”; and (7) “the trial court abused its
discretion in overruling [Lopez’s] bolstering objection to  . . .
[Investigator] Fernando Tanguma.”  We affirm.

I. Background

            On June
8, 2008, eighty-three-year-old Elena Ayala was shot as she rode in the backseat
of her daughter and son-in-law’s black Chrysler 300.  

Modesta
Diaz testified that at 9:30 p.m., she and her husband, Jesus Mario Diaz, picked
up her mother, Ayala, of whom they were the primary caretakers, from the home
of Margarita Esparaza, one of Ayala’s daughters.  The trio proceeded to the
Diazes’s residence with Jesus in the driver’s seat, Modesta in the front
passenger’s side seat, and Ayala in the back passenger’s side seat.  Around
9:50 p.m., Modesta noticed a vehicle, which she later described as a “van” or
“small Blazer” pass and “cut[] in front” of her family’s Chrysler 300 as they
drove on Depot Road near the Monte Cristo intersection in Edinburg, Texas.  The
vehicle stopped, and Jesus honked.  Modesta saw a man “with his face covered”
exit the back passenger’s side door of the vehicle with “a pistol” in his
hand.  Modesta told Jesus, “Let’s get out of here.  Let’s go speeding fast. 
Let’s get out of here.”  Jesus reversed, accelerated backwards, and told
Modesta “to get down on the floorboard.”  Modesta then heard one gunshot. 
Jesus turned the Chrysler around and drove away from the shooter, south towards
McAllen, Texas.  Modesta testified that at the time of the shooting, she did
not know why someone had shot at the Chrysler.

            Modesta
testified that as they drove away, Ayala stated, “I got shot.”  Modesta tried
to calm her mother and told her that the sound was only “a fire cracker,” but
Ayala protested, “No, my daughter.  It was a shot.  I got hit.”  Modesta turned
on the Chrysler’s interior light, saw blood, and confirmed that Ayala had been
shot.  Modesta called 911.  According to Modesta, the 911 dispatcher “told me .
. . not to move—for me to stay there.  Well, we didn’t want to stay there so we
drove all the way to 10th [Street] and [Highway] 107 at the Valero, and that’s
where we waited.”  An ambulance arrived at the Valero and transported Ayala to
a nearby hospital where she was pronounced dead.  

Norma
Jean Farley, M.D., the chief forensic pathologist for both Hidalgo and Cameron
Counties, performed the autopsy on Ayala’s body.  Dr. Farley recalled that
Ayala’s injuries were consistent with a “perforating gun[]shot,” which she
defined as a gunshot that “went through the body, and there was no bullet
recovered.”  Dr. Farley observed that a bullet had travelled “almost straight
through” Ayala’s torso—entering on the left lateral side of Ayala’s chest and
exiting on the right—puncturing her abdomen, diaphragm, stomach, and liver. 
Dr. Farley concluded that the cause of death was a gunshot wound to Ayala’s
chest and abdomen.

Hidalgo
County crime scene specialist, Eduardo Aleman, testified that a bullet entrance
hole was found on the back driver’s side of the Chrysler and that one bullet
was recovered from inside the vehicle.  He also testified that one spent casing
was recovered at the scene of the shooting and that the evidence supported the
theory that only one shot was fired at the Diaz’s Chrysler. 

In
August 2008, Texas Ranger Robert Matthews met with and questioned Lopez’s
friend, Oziel Gutierrez, about the June 8 shooting.  Gutierrez testified that
he gave a statement to Ranger Matthews that Lopez “had come to my house
and . . . [Lopez] started talking to me about a murder that
had taken place.  And that he was like—you know­—somewhat involved, because he
had loaned the gun to some people . . . .”  Gutierrez
denied knowing the names of the people to whom Lopez lent the gun, but stated
that Lopez had lent them the gun “[t]o steal some rims” for “a vehicle,” and
Lopez drove a Chrysler 300. 

On
August 22, 2008, Ranger Matthews and Investigator Fernando Tanguma went to
Lopez’s home.  Lopez agreed to go to the Hidalgo County Sheriff’s Office to
speak with the officers.  While en route to the sheriff’s office, the officer
stopped at a “mobile unit.”[1] 
Lopez told the officers that he planned to speak to an attorney before giving a
statement.  At that point, the officers stopped questioning Lopez and decided
to continue to the sheriff’s office.  Investigator Tanguma testified that as
they drove to the sheriff’s office, Lopez told him that “he knew what I
[Investigator Tanguma] was talking about.  He told me that it was a .40 caliber
handgun.  He told me that the gun was located underneath his house.”[2] 
The officers drove back to Lopez’s residence, and Lopez consented to the search
of his house.  Investigator Tanguma testified that Lopez resided in a frame
home that was lifted off the ground by blocks.  Investigator Tanguma recalled,
“[Lopez] pointed out where the gun was. . . .  He walked to the corner of the
residence and pointed . . . he told me ‘If you stick your hand under there you
can grab the gun, and it’s wrapped in a newspaper, and it’s there in the
corner.’”  Investigator Tanguma complied and recovered the firearm.

Forensic
firearms and tool-marks examiner, Richard Hitchcocks, conducted a comparative
analysis between the bullet, cartridge, and firearm recovered by police.  Based
on his analysis, Hitchcocks opined that the cartridge recovered near the
intersection of Depot Road and Monte Cristo was fired from the firearm located
under Lopez’s house.  Hitchcocks was unable to conclusively determine whether
the bullet recovered from the Diaz’s Chrysler was fired from the firearm found
under Lopez’s home; however, he “could not eliminate that firearm as the one
that that bullet may have been fired from.”  

At
the conclusion of the trial, a jury convicted Lopez of capital murder and
punishment was assessed at life imprisonment in the Institutional Division of
the Texas Department of Criminal Justice.  See id.  Lopez filed a motion
for new trial.  A hearing was held, and the motion was subsequently denied by
the trial court.  This appeal ensued.

II. Sufficiency of the Evidence

            By his
first and second issues, Lopez contends that the evidence is legally and
factually insufficient to support the jury’s verdict.  Specifically, Lopez
asserts that the evidence is insufficient to support Lopez’s conviction “either
as a principal and/or a party and/or a conspirator” to capital murder.

A.        Standard of
Review

The Court of Criminal
Appeals has recently held that there is “no meaningful distinction between the Jackson
v. Virginia legal sufficiency standard and the Clewis factual-sufficiency
standard” and that the Jackson standard “is the only standard that a
reviewing court should apply in determining whether the evidence is sufficient
to support each element of a criminal offense that the State is required to
prove beyond a reasonable doubt.”  Brooks v. State, No. PD-0210-09, 2010
WL 3894613, at *8, *14 (Tex. Crim. App. Oct. 6, 2010) (plurality opinion). 
Accordingly, we review Lopez’s claims of evidentiary sufficiency under “a
rigorous and proper application” of the Jackson standard of review.  Id.
at *11.

            Under the
Jackson standard, “the relevant question is whether, after viewing the
evidence in the light most favorable to the prosecution, any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt.”  Jackson v. Virginia, 443 U.S. 307, 319 (1979); see Brooks,
2010 WL 3894613, at *5 (characterizing the Jackson standard as: 
“Considering all of the evidence in the light most favorable to the verdict,
was a jury rationally justified in finding guilt beyond a reasonable doubt.”). 
“[T]he fact[-]finder’s role as weigher of the evidence is preserved through a
legal conclusion that upon judicial review all of the evidence is to be
considered in the light most favorable to the prosecution.”  Jackson,
443 U.S. at 319 (emphasis in original); see Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979) (“The
jury, in all cases, is the exclusive judge of facts proved and the weight to be
given to the testimony . . . .”); Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000) (“The jury is the exclusive judge of
the credibility of witnesses and of the weight to be given testimony, and it is
also the exclusive province of the jury to reconcile conflicts in the
evidence.”). 

In
the present case, the jury charge included general instructions on the concept
of criminal responsibility under the law of parties.  See Tex. Penal Code Ann. § 7.02(a)(2)
(Vernon 2003); id. § 7.02(b) (providing that a party is criminally
responsible for the conduct of another “[i]f, in the attempt to carry out a
conspiracy to commit one felony, another felony is committed by one of the
conspirators, all conspirators are guilty of the felony actually committed,
though having no intent to commit it, if the offense was committed in
furtherance of the unlawful purpose and was one that should have been
anticipated as a result of the carrying out of the conspiracy”).  The
application paragraph applied the law of the parties under section 7.02(a)(2),
but did not apply the section 7.02(b) concept of criminal responsibility for
the anticipated result of a conspiracy.  

The
sufficiency of the evidence is measured by the elements of the offense as
defined by a hypothetically correct jury charge.  Curry v. State, 30
S.W.3d 394, 404 (Tex. Crim. App. 2000); Adi v. State, 94 S.W.3d 124, 131
(Tex. App.–Corpus Christi 2002, pet. ref’d).  Because a hypothetically correct
jury charge in this case would authorize the jury to convict on either section
7.02(a)(2) or 7.02(b), we must determine whether the evidence is sufficient
under either of these alternative theories of liability.  See Garza Vega v.
State, 267 S.W.3d 912, 915-16 (Tex. Crim. App. 2008).  

B.        Applicable
Law

Under section
7.02(a)(2), “[a] person is criminally responsible for an offense committed by
the conduct of another if . . . acting with intent to promote or assist the
commission of the offense he solicits, encourages, directs, aids, or attempts
to aid the other person to commit the offense.”  Tex. Penal Code Ann. § 7.02(a)(2).  An act is committed intentionally
when it is the actor’s conscious objective or desire to engage in the conduct
which causes the result.  Id. § 6.03(a) (Vernon 2003).  A person acts
knowingly when he knows that the conduct is reasonably certain to cause the
result.  Id. § 6.03(b).  Intent may “be
inferred from circumstantial evidence[,] such as acts, words, and the conduct
of the appellant.”  Guevara v. State, 152 S.W.3d 45, 50
(Tex. Crim. App. 2004); see also Hart v. State, 89 S.W.3d 61, 64 (Tex.
Crim. App. 2002) (stating that a fact-finder may infer both knowledge and
intent from the defendant’s acts, words, or conduct and from the nature of the
wounds inflicted on the victim); Ledesma v. State, 677 S.W.2d 529, 531
(Tex. Crim. App. 1984) (noting that the requisite culpable mental state may
also be inferred from the surrounding circumstances).

A person may be found
guilty of capital murder under the law of parties.  Johnson v. State, 853 S.W.2d 527, 535
(Tex. Crim. App. 1992) (en banc); see also Vega v. State, No.
13-05-007-CR, 2010 WL 2966861, at *3 (Tex. App.–Corpus Christi July 29, 2010,
pet. ref’d) (mem. op. on remand, not designated for publication).  A person commits
capital murder if he or she intentionally or knowingly causes the death of an
individual while in the course of committing or attempting to commit, among
other things, robbery.  Tex. Penal Code
Ann. §§ 19.02(b)(1) (Vernon 2003), 19.03(a)(2).  “In determining
whether a defendant participated in an offense as a party, the fact[-]finder
may examine the events occurring before, during, and after the commission of
the offense and may rely on actions of the defendant that show an understanding
and common design to commit the offense.”  Frank v. State, 183 S.W.3d 63, 73
(Tex. App.–Fort Worth 2005, pet. ref’d).  Furthermore, “[c]ircumstantial
evidence may be used to prove one is a party to an offense.”  Cordova v. State, 698 S.W.2d 107, 111
(Tex. Crim. App. 1985).

C.        Analysis

Lopez
argues that the evidence is insufficient to support his conviction because the
State failed to prove, beyond a reasonable doubt, that “he harbored a specific
intent that a murder be committed,” because the evidence showed that “murder
was not part of [his] plan” and, instead, was “the result of something gone
wrong.”  

Gutierrez
testified Lopez “had come to my house and . . . [Lopez]
started talking to me about a murder that had taken place.  And that he was
like—you know­—somewhat involved, because he had loaned the gun to some
people . . . .”  Gutierrez also testified that Lopez loaned
the gun to unidentified individuals “[t]o steal some rims” for “a vehicle,” and
Lopez drove a Chrysler 300.  There was evidence that on the night of June 8,
2008, Ayala was shot as she rode in the backseat of a Chrysler 300.  When Lopez
was later questioned about the June 8 shooting, he told investigators that he
“knew what [they were] talking about” and led them to a firearm wrapped in
newspaper and concealed under his home.  There was evidence that a cartridge
found at the scene of the June 8 shooting was discharged from the firearm
located under Lopez’s home.

Lopez
relies on Tippett v. State, to support his argument that the evidence is
insufficient to support his conviction.  41 S.W.3d 316, 324 (Tex. App.–Fort
Worth 2001, no pet.), disapproved of on other grounds by Hooper v. State,
214 S.W.3d 9, 15 (Tex. Crim. App. 2007).  In Tippett, the evidence was
insufficient to support a capital murder conviction under both sections
7.02(a)(2) and 7.02(b) where the evidence established that the appellant and
the alleged co-conspirator agreed only to rob the victim and there was no
evidence that the appellant knew that the alleged co-conspirator had a gun in
his possession during the commission of the underlying robbery.  Id. at
324-25.  The present case is distinguishable because the evidence showed that
Lopez asked two unnamed individuals to commit robbery and provided them with a
gun with the intent that the gun be used in the commission of the offense.  A
jury may infer intent to kill from the use of a deadly weapon.  See Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996); Adanandus v. State, 866 S.W.2d 210, 215 (Tex.
Crim. App. 1993) (holding that if a deadly weapon is used in a deadly manner,
the inference is almost conclusive that the defendant intended to kill); Vega
v. State, 198 S.W.3d 819, 825 (Tex. App.–Corpus Christi 2006), vacated
on other grounds, 267 S.W.3d 912 (Tex.
Crim. App. 2008).  Thus, the jury could have reasonably inferred that Lopez
intended to promote or assist in murder when he provided two unnamed
individuals with a firearm and instructed them to “[t]o steal some rims” for “a
vehicle”; see Vega, 198 S.W.3d at 825, and the evidence was sufficient
to support Lopez’s conviction under section 7.02(a)(2).  See Tex. Penal Code Ann. § 7.02(a)(2).  Viewing all of the
evidence in the light most favorable to the prosecution, we conclude that a
rational juror could have found beyond a reasonable doubt that Lopez was guilty
of capital murder.  See Jackson, 443 U.S. at 319; Brooks, 2010 WL
3894613, at *5.  Accordingly, we overrule Lopez’s first and second issues.

III. Charge Error

By
his third, fourth, and fifth issues, Lopez complains of charge error.  When we review a jury
charge, we must first determine whether error exists.  Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003).  If we find error, we
apply the appropriate harm analysis depending on whether the error was
preserved in the trial court.  See Jennings v. State, 302 S.W.3d 306,
311 (Tex. Crim. App. 2010) (stating that all jury-charge errors are cognizable
on appeal, but unobjected-to error is reviewed for “egregious harm,” while
objected-to error is reviewed for “some harm”); Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on reh’g).

A.        Failure to
Apply Texas Penal Code Section 7.02(b)

By
his third issue, Lopez contends that the trial court erred by failing to apply
the theory of criminal liability found in Texas Penal Code section 7.02(b).  See
Tex. Penal Code Ann. §
7.02(b).  The State concedes that the trial court erred by failing to include
section 7.02(b) in the application paragraph of the charge, even though Lopez
Failed to object to the error at trial.  Nevertheless, because he did not
object to the omission of section 7.02(b) at trial, Lopez now asserts that he
was egregiously harmed by the trial court’s error.  See Almanza, 686 S.W.2d at 171. 
Egregious harm will
be found only if the error deprived the defendant of a fair and impartial
trial.  Ex parte Smith, 309 S.W.3d 53, 63 (Tex. Crim. App. 2010) (citing
Almanza, 686 S.W.2d at 171).  

“The application
paragraph of a jury charge is that which authorizes conviction, and an abstract
charge on a theory of law which is not applied to the facts is insufficient to
bring that theory before the jury.”  Campbell v. State, 910 S.W.2d 475,
477 (Tex. Crim. App. 1995) (citing Jones v. State, 815 S.W.2d 667, 669
(Tex. Crim. App. 1991)).  Thus, because the jury charge did not apply Texas Penal
Code section 7.02(b) to the facts of the present case, section 7.02(a)(2) was
the only theory of criminal responsibility for another’s conduct that was
properly before the jury.  See id.  We have already held that the
evidence is sufficient to support Lopez’s conviction pursuant to section
7.02(a)(2); thus, we cannot conclude that Lopez was egregiously harmed by the
trial court’s failure to place section 7.02(b)—an alternative theory of
liability—properly before the jury.  See Greene v. State, 240 S.W.3d 7,
15-16 (Tex. App.–Austin 2007, pet. ref’d).  We overrule Lopez’s third issue.

B.        Comment on
the Weight of the Evidence

            By his
fourth issue, Lopez contends that the trial court “committed reversible error
by including an unsubstantiated and prejudicial comment on the weight of the
evidence” in the jury charge “by simply denominating, or characterizing, two
unnamed persons as conspirators.”  Specifically, Lopez complains of the
following language:

If you find from the evidence beyond a
reasonable doubt that on or about JUNE 8, 2008, in  Hidalgo County, Texas, JOHN
DOE 1 and JOHN DOE 2 (hereinafter referred to as Conspirators) .
. . .

 

(Emphasis added.) 
The charge then authorized the jury to find Lopez guilty of capital murder if
it found that he “acted with intent to promote or assist the commission of the
offense by conspirators by encouraging, directing, aiding or attempting to aid
conspirators to commit the offense of robbery which resulted in the death of
Elena Ayala . . . .”  At trial, Lopez did not object to the
inclusion of the above language as a comment on the weight of the evidence;
therefore, we must determine whether the charge was erroneous and, if so,
whether that error caused egregious harm.  See Jennings, 302 S.W.3d at
311; Almanza, 686 S.W.2d at 171.  

A charge that assumes
the truth of a controverted issue is a comment on the weight of the evidence
and is erroneous.  Whaley v. State, 717 S.W.2d 26, 32 (Tex. Crim. App.
1986); see Tex. Code Crim. Proc.
Ann. art. 36.14 (Vernon 2007) (providing that a trial court shall
deliver to the jury “a written charge distinctly setting
forth the law applicable to the case; not expressing any opinion as to the
weight of the evidence, not summing up the testimony, discussing the facts or
using any argument in his charge calculated to arouse the sympathy or excite
the passions of the jury”).  Lopez asserts that the charge was erroneous
because it authorized the jury “to assess Appellant’s criminal culpability as a
party and/or a conspirator with two persons who—if the instruction in that
regard were to be followed . . . —were conspirators.”  

Assuming,
without deciding, that referring to the unnamed individuals as “conspirators”
was erroneous, such a reference did not cause Lopez egregious harm.  The
application paragraph authorized the jury to find Lopez guilty of capital
murder if it found, beyond a reasonable doubt, that Lopez:  (1) acted with
intent to promote or assist the commission of the offense; and (2) encouraged,
directed, aided or attempted to aid in the commission of the offense.  See Tex. Penal Code Ann. § 7.02(a)(2). 
Thus, the usage of the term “conspirators” to refer to the two unnamed
individuals does not necessarily implicate Lopez as a conspirator.  Even if the
jury believed that the two unnamed individuals were “conspirators,” in order to
find Lopez guilty, the jury, nevertheless, had to find that the elements of
section 7.02(a)(2) were proven beyond a reasonable doubt.  See id. 
Under the facts of the present case, there is no indication that the trial
court’s error, if any, in referring to the unnamed individuals as
“conspirators” caused Lopez egregious harm.  See Almanza, 686 S.W.2d at
171.  We overrule Lopez’s fourth issue.  

C.        Lesser-Included
Offenses

            By his
fifth issue, Lopez asserts that the trial court reversibly erred in overruling
his objection to the jury charge’s inclusion of murder, aggravated robbery, and
robbery as lesser-included offenses.[3] 
The State asserts that, under the facts of the present case, neither robbery
nor aggravated robbery constitutes a lesser-included offense.  However, even assuming,
without deciding, that the trial court erred by including these offenses in the
jury charge, we would not conclude that such error amounts to reversible error
because Lopez was not harmed.  See id.

Texas
law generally presumes that the jury follows the trial court’s instructions in
the manner presented.  See Thrift v. State, 176 S.W.3d 221, 224
(Tex. Crim. App. 2005) (citing Colburn v. State, 966 S.W.2d 511, 520
(Tex. Crim. App. 1998); Williams v. State, 937 S.W.2d 479, 490 (Tex.
Crim. App. 1996); Waldo v. State, 746 S.W.2d 750, 753 (Tex. Crim. App.
1988); Gardner v. State, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)). 
The jury charge instructed the jury to determine whether the evidence proved
beyond a reasonable doubt that Lopez was guilty of capital murder before
considering whether he was guilty of any of the lesser-included offenses
included in the charge.  Because the jury found Lopez guilty of capital murder,
we presume that it did not consider the other offenses.  See id.  Thus,
the trial court’s error, if any, in the inclusion of the offenses of murder,
aggravated robbery, and robbery in the jury charge did not harm Lopez.  See
Almanza, 686 S.W.2d at 171.  We overrule Lopez’s fifth issue.  

IV. Evidentiary Rulings

In
his sixth, seventh, and eighth issues, Lopez urges that the trial court abused
its discretion by allowing the admission of certain evidence.  We review a trial
court’s evidentiary rulings under an abuse-of-discretion standard.  Klein v.
State, 273 S.W.2d 297, 304-05 (Tex. Crim. App. 2008).  To constitute an
abuse of discretion, the trial court’s decision must fall outside the zone of
reasonable disagreement.  Wead v. State, 129 S.W.3d 126, 129 (Tex. Crim.
App. 2004).

A.        “Investigator
Exception”

By
his sixth issue, Lopez asserts that the trial court abused its discretion by
crafting an “investigator exception” to the hearsay rules, “which permitted
[Investigators Tanguma and Cantu, as well as Deputy Salvador Arguello (herein
collectively referred to as “the investigators”)] to tell jurors what they
heard from other testifying and non-testifying sources.”  Additionally, Lopez
complains that the trial court’s admission of the investigators’ testimony
violates the Confrontation Clause.[4] 
See Crawford v. Washington, 541 U.S. 36, 53-54 (2004).  

1.
Disputed Testimony

Specifically,
Lopez complains of the admission of Deputy Arguello’s testimony, which follows in
pertinent part:

[The State]:                On
August 18th, 2008, did you receive any information that was relevant to this
investigation?

 

[Deputy Arguello]:    Yes.

 

[The State]:                Okay. 
Did that information that you received indicate a potential suspect for this
crime?

 

[Deputy Arguello]:    Yes.

 

[The State]:                Did
you pass that information on to the investigating officers?

 

[Deputy Arguello]:    Yes.

 

[The State]:                All
right.  Who was the potential witness that was identified?

 

[Defense
Counsel]: Your Honor, again, my objection is as to hearsay.  This is back door
hearsay.  This witness’s investigative techniques have not been challenged, and
I believe—

 

The Court:                 The
objection is overruled.

 

[The State]:                Deputy,
did that information provide you with a name for a potential suspect?

 

[Deputy Arguello]:    Yes.

 

[The State]:                All
right.  Who was that person?

 

[Deputy Arguello]:    Ricardo, Ricardo
Lopez.

 

Lopez
also complains of the admission of the following testimony provided by Investigator
Tanguma:

[The State]:                            Now,
sir, at this point did you have information which—or let me put it this way: 
Did you obtain information which led you to believe that Ricardo Lopez was
involved in this actual case—the murder?

 

[Defense
Counsel]:             Objection, Your Honor.  It calls for hearsay.  It is
backdoor hearsay, that was previously stated.

 

The Court:                             Overruled.

 

[The State]:                            You
may answer, sir.

 

[Investigator
Tanguma]:      Yes, I did.

 

. . . . 

 

[The State]:                            Do
you know what type of vehicle Mr. Lopez wanted the rims for?

 

[Investigator
Tanguma]:      Yes, He’s—

 

[Defense
Counsel]:             Objection, Your Honor.  It calls for hearsay.

 

. . . .

 

The Court:                             The
objection is overruled.

 

[Investigator
Tanguma]:      Yes, for a Chrysler 300.

 

Lopez
also complains of the following exchange during Investigator Cantu’s testimony:

[The State]:                            How
was it that Mr. Gutierrez’s information and statement helped you in the
investigation, sir?

 

[Investigator
Cantu]:            Through the interview with Mr. Gutierrez, it was learned—

 

[Defense
Counsel]:             Again, Your Honor, the objection as to hearsay.

 

The Court:                             The
objection is overruled.

 

[The State]:                            You
may answer.

 

[Investigator
Cantu]:            Through the interview with Mr. Gutierrez, it was learned
that he had been a friend of the defendant for sometime [sic].  The defendant
had confided in him—that he had provided a weapon that was used to go steal
some rims for his vehicle, which was a 300 Chrysler, identical—or similar to
the one that the deceased was riding in.  It was learned that he was feeling
bad about providing that weapon, and he had knowledge that the weapon that he
provided these individuals to steal these rims had been used to shoot and kill this
victim—the deceased.

 

2.
Preservation of Error

To preserve an issue
for appellate review, a party must make a timely objection or request to the
trial court, sufficiently stating the specific grounds for the requested
ruling, unless apparent from the context, and obtain an adverse ruling.  See
Tex. R. App. P. 33.1(a); Wilson
v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Trevino v. State, 174 S.W.3d 925, 927
(Tex. App.–Corpus Christi 2005, pet. ref’d).  Moreover, the objection or
request at trial must comport with the complaint presented on appeal. Wilson,
71 S.W.3d at 349.  Even constitutional errors may be forfeited by failure to
object at trial.  Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995); Trevino, 174 S.W.3d 927.  

A
review of the record demonstrates that Lopez objected to the disputed portions
of the investigators’ testimonies on hearsay grounds.  A party’s hearsay objection
does not preserve error on a Confrontation Clause ground.  See Reyna v. State, 168 S.W.3d 173, 179
(Tex. Crim. App. 2005); see also Nolen v. State, No. 13-08-00526-CR,
2009 WL 4051980, at *4 (Tex. App.–Corpus Christi Nov. 24, 2009, pet. ref’d)
(mem. op. on reh’g, not designated for publication).  Accordingly, in reviewing
Lopez’s sixth issue, we will only consider his hearsay arguments, as his
Confrontation Clause arguments were not preserved.  See Reyna, 168
S.W.3d at 179; see also Nolen, 2009 WL 4051980, at *4.

3.
Analysis

Hearsay is a
statement, other than one made by the declarant while testifying at the trial,
which is offered to prove the truth of the matter asserted.  Tex. R. Evid. 801(d).  Nevertheless,
“[p]olice officers may testify to explain how the investigation began and how
the defendant became a suspect.”  Lee v. State, 29 S.W.3d 570, 577-78
(Tex. App.–Dallas 2000, no pet.) (citing Dinkins v. State, 894 S.W.2d 330, 347
(Tex. Crim. App.1995); Short v. State, 995 S.W.2d 948, 954 (Tex.
App.–Fort Worth 1999, pet. ref’d); Thornton v. State, 994 S.W.2d 845,
854 (Tex. App.–Fort Worth 1999, pet. ref’d)); see also Samora v. State,
No. 13-09-00587-CR, 2010 WL 3279536, at *7 (Tex. App.–Corpus Christi Aug. 19,
2010, no pet.) (mem. op., not designated for publication).  “An officer’s
testimony is not hearsay when it is admitted, not for the truth, but to
establish the course of events and circumstances leading to the arrest.”  Thornton,
994 S.W.2d at 854.  The critical question
is whether there is an inescapable conclusion that a piece of evidence is being
offered to prove statements made outside the courtroom.  See Schaffer v. State, 777 S.W.2d 111, 114
(Tex. Crim. App. 1989).

The
State’s questions to the investigators were not designed to elicit hearsay
testimony; instead the questions allowed the investigators to comment on their
investigations and how Lopez became a suspect.  See Dinkins, 894 S.W.2d
at 347; Lee, 29 S.W.3d at 577-78.  Accordingly, the trial court did not
abuse its discretion in overruling Lopez’s hearsay objections.  Moreover, even
if the complained-of portions of the investigator’s testimonies had been
hearsay, any error in admitting them was harmless because the testimonies were
cumulative of Gutierrez’s testimony.  See Brooks v. State, 990
S.W.2d 278, 287 (Tex. Crim. App. 1999) (providing that “any error in admitting
[hearsay] evidence was harmless in light of other properly admitted evidence
proving the same fact”).  We overrule Lopez’s sixth issue.

B.        Ultimate
Issue of Fact

            In his
seventh issue, Lopez asserts that “the trial court abused its discretion in
allowing . . . [Investigator] Cantu to testify about an
ultimate issue of fact for the jury.”  During the State’s direct examination of
Investigator Cantu, the State asked whether he was able to “determine why this
murder took place.”  Lopez objected on the grounds that the question “invad[es]
the province of the jury” and “calls for an ultimate conclusion of facts.”  The
trial court overruled the objections, and Investigator Cantu testified:

Through the investigation after
reviewing the case itself, it was learned that the defendant was attempting to
get some rims for his vehicle.  He had provided a weapon to two unidentified
individuals at this time who in turn went out to get those rims for him.  That
weapon that he provided was located at this residence, and was used—and was
used to shoot—and was the weapon that killed the victim.

 

            “The doctrine which
prohibited testimony that would invade the province of the jury ‘is and has
been long dead’ as a proposition of law.”  Mays v. State, 563 S.W.2d
260, 263 (Tex. Crim. App. 1978) (quoting Boyde v. State, 513 S.W.3d 588,
590 (Tex. Crim. App. 1974) (citing Hopkins v. State, 480 S.W.2d 212, 220
(Tex. Crim. App. 1972))).  However, “[t]he repudiation of the ‘invasion of
the province of the jury’ rule does not mean that an expert or non-expert
witness may freely state his opinion in regard to any fact in issue.”  Hopkins,
480 S.W.2d at 220.  Lopez asserts that the trial court abused its discretion by
overruling his objection and allowing Investigator Cantu “to testify about an
ultimate issue of fact for the jury (which was an opinion as to why [the
Diaz’s] car was stopped).”  We disagree.

Motive is not a
required element in a criminal case.  Bush v. State, 628 S.W.2d 441, 444
(Tex. Crim. App. 1982).  And although “evidence of motive
is one kind of evidence [that aids in] establishing proof of an alleged
offense,” see Crane v. State, 786 S.W.2d 338,
349-50 (Tex. Crim. App. 1990), the evidence of motive within the complained-of
statement is cumulative of evidence presented in the testimonies of Gutierrez,
Ranger Matthews, and Investigator Tanguma.  Thus, error, if any, by the trial court
in allowing the admission of Investigator Cantu’s testimony is harmless.  See
Brooks, 990 S.W.2d at 287.  Lopez’s seventh issue is overruled. 

C.        Bolstering

By
his eighth issue, Lopez contends that the trial court “abused its discretion in
allowing the State . . . to bolster [Investigator] Tanguma’s testimony by
inquiring whether he would lose his peace officer’s license if he were to
testify falsely.”  During the State’s questioning of Investigator Tanguma, the
following exchange occurred:

[State]:                                    Investigator
Tanguma[,] as a law enforcement [sic] and an investigator with experience, do
you know that there is a penalty for perjury, correct [sic]?

 

[Investigator Tanguma]:      Yes, I
do.

 

[Defense
Counsel]:             Objection, Your Honor.  Again, bolstering the witness.

 

The Court:                             The
objection is overruled.

 

[State]:                                    You
may answer, sir.

 

[Investigator Tanguma]:      Yes,
ma’am.

 

[State]:                                    If
you were to commit perjury on the stand, would you lose your license as a peace
officer?

 

[Investigator Tanguma]:      Oh, yes,
I would.

 

[State]:                                    Thank
you, sir.  I’ll pass the witness.

 

Lopez
lodged an objection to the State’s question on whether there was a penalty for
perjury.  However, he did not object to the question of which he now
complains—whether Investigator Tanguma would lose his peace officer’s license
if he were to testify falsely.  Thus, Lopez failed to preserve this complaint. 
See Tex. R. App. P.
33.1(a).  Even if we were to conclude that Lopez’s objection to the State’s
first question preserved a complaint as to the second question, Lopez fails to
cite any authority or advance any argument to support his contention that the
trial court erred by overruling his objection.  As such, this issue is
inadequately briefed.  See Tex.
R. App. P.
38.1(i) (providing that “the brief must contain a clear and concise argument
for the contentions made, with appropriate citations to authorities and to the
record.”).  We overrule Lopez’s eighth issue.

V. Conclusion

            Having
overruled all of Lopez’s issues on appeal, we affirm the trial court’s
judgment.

 

________________________

ROGELIO VALDEZ

Chief Justice

 

Do
not Publish.

Tex. R. App. P.
47.2(b)

Delivered
and filed the

30th
day of December, 2010.









[1]
Investigator Tanguma defined a “mobile unit” as a “portable” sheriff’s office.





 

[2]
On appeal, Lopez does not challenge the voluntariness of his statements to
police. 

 





[3]
The alleged lesser-included offenses were included in the jury charge at the
State’s request.





[4]
The State urges that Lopez’s sixth issue is multifarious and therefore presents
nothing for review.  See Taylor v. State, 190 S.W.3d 758, 764 (Tex.
App.–Corpus Christi 2006), rev’d on other grounds, 233 S.W.3d 356 (Tex. Crim.
App. 2007).  Out of an abundance of caution, and because we may elect to
consider multifarious issues if we are able to determine, with reasonable
certainty, the alleged error about which the complaint is made, we elect to
address Lopez’s sixth issue.  See Stults v. State, 23 S.W.3d 198, 205
(Tex. App.–Houston [14th Dist.] 2000, pet. ref’d); see also Dilworth v.
State, No. 13-07-00520-CR, 2008 WL 5732155, at *3 n.3 (Tex. App.–Corpus
Christi Dec. 4, 2008, pet. ref’d) (mem. op., not designated for publication).